OPINION OF THE COURT
Eugene E. Peckham, S.
This is an accounting proceeding brought by Jerome Z. Knebel, as administrator c. t. a. of this estate. The decedent, George H. Richmond, died on October 15, 1991, and letters testamentary were issued to Betty K. Wood on March 13, 1992. She was removed as executor on November 7, 1997, for failure to file her final account by now retired Surrogate John M. Thomas. Mr. Knebel, as the chief fiscal officer of the county, and thus the public administrator, was appointed to replace her. After her removal, and despite being required by court order to do so, Ms. Wood failed to deliver the estate records in her possession to her successor until a contempt proceeding was brought against her. The records were finally delivered on March 1, 1999.
No objections have been filed to the accounting prepared by Mr. Knebel, but three issues remain for decision: the request by Ms. Wood for compensation for her services as executor prior to removal, commissions for the administrator c. t. a., and a request for legal fees filed by William L. Gibson, Jr., the county attorney, for services rendered as counsel to the public administrator.
During Ms. Wood’s administration of the estate, she failed to file the Federal and New York estate tax returns on time resulting in Internal Revenue Service penalty of $6,825.55 and interest totaling $7,851.72 and New York penalty of $8,521.85 and interest totaling $8,192.47. (Account, schedule H.) Furthermore, the major asset of the estate was four airplanes with a total appraised value as reported on the inventory filed for the estate of $265,710. These airplanes were apparently sold by Ms. Wood for a loss of $133,032.43 (account, schedules B, I). Ms. Wood was not named in the will as a beneficiary of anything in the will, yet she apparently received the decedent’s *874 Cadillac automobile valued at $4,700, and on May 5, 1992, a payment of $1,900 (account, schedules C, E, J). Her removal will cause the estate to be charged additional commissions for the public administrator and legal fees to his counsel. In addition, during her tenure as executor, no distributions of any kind were made to the children as residuary beneficiaries (account, schedules E, I).
It is well settled that the award of commissions and legal fees is in the discretion of the Surrogate. (SCPA 2307, 2301; Matter of Smith, 91 AD2d 789 [3d Dept 1982]; Matter of Stortecky v Mazzone, 85 NY2d 518 [1995]; Matter of Freeman, 34 NY2d 1 [1974]; 7 Warren’s Heaton, Surrogates’ Courts § 103.02 [10]; § 106.01 [1] [6th ed rev].) Unfortunately, in this case the court is without authority to impose a surcharge on Ms. Wood for her mismanagement of the estate because no objections have been filed. (Matter of Dolan, 176 AD2d 1019 [3d Dept 1991]; Matter of Spade, 28 AD2d 552 [2d Dept 1967].)
A number of decisions hold that the mere fact that the fiduciary has been removed is sufficient to deny commissions. (In re Manville, 111 NYS2d 267 [Sur Ct, Westchester County 1952]; Matter of Israel, 64 Misc 2d 1035 [Sur Ct, Nassau County 1970].) Likewise, courts have held that failure to account, substantial delay in accounting, or failure to keep proper records, is cause for denial of commissions (Matter of Rozycki, 144 Misc 2d 741 [Sur Ct, Bronx County 1989]; In re De Filippis, 113 NYS2d 724 [Sur Ct, Warren County 1952]; In re Ducas, 109 NYS2d 17 [Sur Ct, NY County 1950]). Other decisions hold that commissions will be denied to the extent of penalties and interest assessed against the estate for late filing of tax returns. (Matter of Campbell, 138 AD2d 827 [3d Dept 1988]; Matter of Scott, 234 AD2d 551 [2d Dept 1996]; Matter of Toth, NYLJ, Nov. 18, 1987, at 15, col 2 [Sur Ct, Queens County].) Here, the penalties and interest imposed on the estate far exceed the amount claimed as compensation by Ms. Wood.
In sum, the administration of this estate has been delayed for almost 10 years due to the maladministration of Ms. Wood and her delay and failure to account or turn over records to the public administrator until cited for contempt. “[I]t is well settled that when the fiduciary is derelict in the performance of his or her duties, the denial of commissions is within the discretion of the Surrogate.” (Matter of Smith, 91 AD2d 789, 791.) Accordingly, Ms. Wood’s claim for compensation is denied in its entirety.
The law is also clear that a successor fiduciary is entitled to full commissions on all assets actually received and paid out by *875 him. (Matter of Farone, 162 AD2d 828 [3d Dept 1990]; Matter of Jadwin, 58 Misc 2d 809 [Sur Ct, Suffolk County 1969]; Matter of Teller, 203 Misc 366 [Sur Ct, Cayuga County 1952].) The court notes that the computation of commissions at schedule I shows the public administrator received $97,562.23 and paid out $104,979.84 with commissions computed on both those amounts. It is obviously impossible to pay out more than is received. Since this estate has been so long delayed and the beneficiaries want and deserve to have it wound up, commissions for paying and receiving will be computed on $97,562.23. Mr. Knebel is allowed commissions of $4,878.12.
Lastly, there is the question of legal fees to the county attorney. It is clear the public administrator may retain counsel to represent him in his duties as administrator of an estate and that such fees are to be paid out of the estate assets. (SCPA 1219, 2302 [4]; 1108 [2] [b]; Matter of McCranor, 176 AD2d 1026 [3d Dept 1991].)
The unique question presented here is whether the county attorney can submit a bill for legal fees to be paid out of the estate when he is retained as counsel by the public administrator. If a private attorney representing the public administrator can be paid from the estate funds, why can’t the county attorney be similarly paid? The problem is the Broome County Code (Code) says the county attorney is “precluded from the private practice of law whatsoever.” (Code § A1701.) Is receiving a fee from a private estate for representing the public administrator the private practice of law?
The county attorney is required to “prosecute and defend all civil actions brought by or against * * * any officer whose compensation is paid from county funds for any official act.” (County Law § 501 [1]; Broome County Charter § C1702 [C].) The Broome County Code also provides that the county attorney “shall have and exercise all the powers and duties * * * lawfully granted * * * by any applicable provision of any act of the State Legislature.” (Broome County Code § A1702.)
Since the chief fiscal officer of the county is required by the Surrogate’s Court Procedure Act to act as public administrator, he is serving as a State agent performing an official act. (SCPA 1219, 1003 [3]; People v Insalaco, 142 Misc 2d 371 [Sup Ct, Erie County 1989]; County of Nassau v Bennett, 35 Misc 2d 586 [Sup Ct, Nassau County 1962]; Matter of Krabbe, 208 Misc 197 [Sur Ct, Suffolk County 1955].) Even though the public administrator receives commissions from the estate, they must be paid over to the county. (SCPA 1207 [5]; Broome County *876 Charter § C502 [H].) As a result, the public administrator is paid solely from county funds for acting as public administrator. The county attorney is also performing an official function when he represents the public administrator in estate activities as required by the State Legislature. When the county attorney acts as counsel to the public administrator, therefore, he is doing so in his public capacity and is not engaged in the private practice of law.
Even though the public administrator and county attorney are performing a public function in representing the estate, there is no logical reason why the estate should not pay for those services if the estate has funds. The statute expressly permits the public administrator to receive commissions and to retain private counsel with these charges to be paid by the estate. (SCPA 1219, 2302 [4].) Other attorneys employed by the county and State can receive fees if their client is able to pay. For example, the public defender is permitted to collect fees “[wjhenever it appears that the defendant is financially able to obtain counsel or to make partial payment” (County Law § 722-d). Also, the Office of Mental Hygiene Legal Service is permitted to receive “reasonable compensation” when representing the person alleged to be incapacitated in an article 81 guardianship proceeding who can afford to pay. (Mental Hygiene Law § 81.10 [f].)
If the county attorney performs services for the estate, he should be paid and the fees turned over to the county just as the public administrator’s commissions are paid over to the county. The estate and its beneficiaries are not disadvantaged if the fees are reasonable, since there ordinarily would have been a charge for commissions and fees if private persons had acted as executor and attorney. SCPA 1219 and section A1701 of the Broome County Code are interpreted to mean that the county attorney may collect a fee from an estate that is able to pay, and if a fee is collected, it must be paid over to the county, just as the public administrator’s commissions are paid over.
Turning to the fee application in this case, the county attorney has requested a fee of $8,702.65 at an hourly rate of $55 for 158.2 hours of work. It is in the discretion of the court to determine if the fees are reasonable considering the various factors set forth in Matter of Freeman (34 NY2d 1 [1974], supra). Similarly, in SCPA 1108 (2) (c), regarding compensation of attorneys for the public administrator in New York City, the statute says:
*877 “In fixing the legal fees, the court shall consider the time and labor required, the difficulty of the questions involved, the skill required to handle the problems presented, the lawyer’s experience, ability and reputation, the amount involved and benefit resulting to the estate from the services, the customary fee charged by the bar for similar services, the contingency or certainty of compensation, the results obtained, and the responsibility involved.”
Certainly $55 per hour is a reasonable rate in this area where private attorneys charge $125 per hour and up for estate work. It is also true that the county attorneys office performed exceptional work in clearing up the mess left by the mismanagement of the removed executor.
However, according to the time records submitted with the fee application, at least seven different attorneys worked on this file. Each time the file was turned over the new attorney would make entries for reviewing the file. If continuity of attorney had been maintained, these repeated file reviews would have been unnecessary. Also the attorneys made entries for such nonlegal activities as copying documents, delivering papers, etc. Altogether over 20 hours of time was thus consumed. The court is also taking into account the size of the estate received by the public administrator and the relatively small amount left for distribution to the beneficiaries as a result of the losses, penalties and interest incurred by the removed executor. Thus, the court determines that a fair and reasonable fee for legal services rendered to the estate by the county attorneys office is $7,500.